**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 21-CR-461 (RCL) |
| ) | Hon. Royce C. Lamberth |
| DEVLYN THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION FOR RELEASE PENDING IMPOSITION**
**OF SENTENCING BASED ON EXCEPTIONAL REASONS**

Defendant, **DEVLYN THOMPSON**, by and through his attorneys, **THOMAS ANTHONY DURKIN**, and **JOSHUA G. HERMAN**, pursuant to the Due Process and Effective Assistance of clauses of the Fifth and Sixth Amendments to the United States Constitution, as well as 18 U.S.C. §3145(c), respectfully moves the Court for its Order granting his request to remain released on bail pending sentencing based on the exceptional reasons set forth below, and under appropriate conditions recommended by Pretrial Services following the change of plea hearing presently scheduled for August 6, 2021. Alternatively, counsel would respectfully request that the Court permit Defendant to plead guilty on August 6, 2021, but withhold entering a finding of guilty on that plea until the day of sentencing. Counsel has conferred with AUSA Tejpal S. Chawla, who has indicated that the government will address the motion orally at the scheduled change of plea hearing.

In support of this Motion, Defendant, through counsel, shows to the Court the following:

**I.   PROCEDURAL BACKGROUND**

After seeing an FBI public notice that he was an individual wanted by the FBI for questioning regarding the events of January 6, 2021, Defendant retained undersigned private

counsel who in turn immediately contacted both the U.S. Attorney's Office for the Northern District of Illinois and the District of Columbia, on January 21 & 25, 2021, respectively. Counsel informed the government that Defendant wished to cooperate with the government's investigation. With the assistance of undersigned counsel, Defendant then participated in three proffer sessions over a three-month period with members of the U.S. Attorney's Office and the FBI. These meetings took place over Zoom on February 2, 2021, March 11, 2021, and April 1, 2021. Defendant also voluntarily provided the FBI complete access to his social media accounts, so as to further its investigation and corroborate Defendant's proffer. Defendant has remained cooperative with the U.S. Attorney's Office and the FBI; and will be providing the U.S. Attorney's Office with a letter of apology to Sergeant W.B. referred to in paragraph 13 of the Statement of Offense.

Following this cooperation and numerous discussions between undersigned counsel and AUSA Chawla, on July 11, 2021, with Defendant and counsel's consent, the government filed a Criminal Information charging Defendant with a single count of assaulting, resisting or impeding certain officers using a dangerous weapon in violation of 18 U.S.C. §111(a)(1) and (b). (Dkt. #1). On July 14, 2021, the Court set a plea agreement hearing for July 20, 2021, by remote video conference. (Minute Entry, July 14, 2021).

On July 20, 2021, the government filed a consent motion to continue the plea agreement hearing. (Dkt. #4). The Court granted the motion and re-set the plea agreement hearing for August 6, 2021, by remote video conference. (Dkt. #5). Also on July 20, 2021, Pretrial Services Officer Andre Sidbury filed a Pretrial Services Report. (Dkt. #6). The Pretrial Services Report recommended that Defendant be placed under USDC General Supervision and report to pre-trial services in the Western District of Washington, Tacoma Division, where Defendant resides. The report also recommended that Defendant not travel to the District of Columbia except for Court or

Pre-trial Services Agency business.

Defendant will participate in the August 6, 2021, change of plea hearing remotely from the U.S. District Courthouse in Seattle, Washington.  The parties anticipate that a sentencing hearing will be scheduled during the change of plea hearing.  The parties also acknowledge that the nature of the charged offense implicates the detention provisions set forth in 18 U.S.C. §3143.  This motion is accordingly submitted prior to the change of plea hearing to highlight the significant reasons why Defendant should be permitted to remain released pending his sentencing; and/or to give the Court a basis for either granting release or withholding judgement on the conviction.

II.     **ARGUMENT**

  **A.  Legal Background**

Issues regarding detention of a defendant pending sentence are typically addressed through 18 U.S.C. §3143.  Pursuant to the provisions of that statute, a judicial officer shall order a person who has been found guilty of an offense that falls under 18 U.S.C. §3142(f)(2)(A), (B), or (C) be detained unless the Defendant meets the exceptions set forth in 18 U.S.C. §3143(a)(2)(A)(i)-(iii). Here, Defendant acknowledges that the offense to which he will plead guilty technically qualifies as a crime of violence under 18 U.S.C. §3142(f)(2)(A).  The narrow exceptions outlined in 18 U.S.C. §3143(a)(2)(A)(i)-(iii) require that the Court finds a "substantial likelihood that a motion for acquittal or new trial will be granted"; *or* that the government attorney recommends a sentence involving no period of incarceration; *and*, that the Court finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.   As discussed in greater detail below, clear and convincing evidence shows that Defendant is neither a flight risk nor a danger to the community. However, counsel acknowledge and concede that Defendant could not secure relief from the terms of the statute under either 18 U.S.C.

§3143(a)(2)(A)(i) or (ii).

Nevertheless, the Court may also order Defendant's release pending sentencing pursuant to 18 U.S.C. §3145(c), which provides as follows:

> **(c) Appeal from a release or detention order.**
> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title [18 USCS § 3731]. The appeal shall be determined promptly. *A person subject to detention pursuant to section 3143(a)(2) or (b)(2) [18 USCS § 3143(a)(2) or (b)(2)], and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1) [18 USCS § 3143(a)(1) or (b)(1)], may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.*

18 U.S.C §3145(c) (italics added).  Notwithstanding its caption, the above-italicized portion of §3145(c) is not limited only to appeals.  Indeed, in a recent opinion and order granting a defendant's request for release pending sentencing, Judge Moss thoughtfully concluded that the term "judicial officer" in §3145(c) is not limited to appellate judges, but also covers district court judges as well.  *See United States v. Harris*, 451 F. Supp. 3d 64, 68-69 (D.D.C. 2020). *See also United States v. Wiggins*, No. 19-cr-258 (KBJ), 2020 U.S. Dist. LEXIS 64941, at *15 (D.D.C. Apr. 10, 2020, Jackson, J.) (finding that §3145(c) authorizes district courts to find "exceptional circumstances"); *United States v. Jones*, No. 19-232 (EGS), 2020 U.S. Dist. LEXIS 78148, at *11 (D.D.C. Apr. 23, 2020) (Sullivan, J.) (same).

In *Harris*, Judge Moss also observed that "every court of appeals that has addressed the question has held that a district court judge may order a person released pursuant to 18 U.S.C. §3145(c)."[1] *Id*. at 69; *but see id*. (noting and distinguishing "minority of district courts" that have

---

[1] Judge Moss cited the following Circuit opinions: *United States v. Meister*, 744 F.3d 1236 (11th Cir. 2013); *United States v. Goforth*, 546 F.3d 712 (4th Cir. 2008); *United States v. Cook*, 42 F. App'x 803 (6th Cir. 2002); *United States v. Herrera-Soto*, 961 F.2d 645 (7th Cir. 1992); *United States v. Jones*, 979 F.2d 804 (10th Cir. 1992); *United States v. Carr*, 947 F.2d 1239 (5th Cir. 1991); *United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003); *United States v. Lea*, 360 F.3d 401 (2d Cir. 2004).

4

concluded that district judges cannot use §3145(c)'s "exceptional reasons" clause). Thus, release pending sentencing may be ordered under appropriate conditions when a defendant can clearly show that there are "exceptional reasons" why detention "would not be appropriate." 18 U.S.C. §3145(c). This makes only perfect sense, since the statute seems clearly to permit a district court judge to apply § 314(c) and its standards if the district court judge were reviewing an appeal of a Magistrate Judge's detention order.

### B. Defendant Does Not Pose a Danger to the Community and Is Not a Flight Risk

As quoted above, 18 U.S.C. §3145(c) provides that a person "who meets the conditions set forth in section 3143(a)(1)" may be ordered release if there are exceptional circumstances supporting that request. Section 3143(a)(1) requires a court to find "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. §3143(a)(1).

Defendant is clearly not a flight risk. As noted above and as set forth in the Statement of Offense that has been tendered to the Court, when Defendant learned that he was wanted by the FBI for questioning, he sought and retained private counsel; and then, through counsel, contacted the U.S. Attorney's Office and effectively surrendered. He willingly sat for three remote proffer meetings over a three-month period this winter and voluntarily granted law enforcement access to all of his social media accounts. He has remained cooperative throughout the pre-plea process and will continue to do so, even though he resides and works in the Western District of Washington. As noted in the Statement of Offense, the government acknowledges Defendant's cooperation even though it did not rise to the level of substantial assistance to authorities under U.S.S.G. §5K1.1. See Statement of Offense, ¶16.

Nor can Defendant be said to pose a risk to any other person or the community if released.

Defendant most certainly recognizes and has always acknowledged the seriousness of the offense. He also acknowledges that the offense itself cannot be divorced and viewed in isolation from the larger events that occurred on January 6, 2021. However, several points must be made to distinguish Defendant's case from some of the other more highly publicized charges involving violence in the riot at the Capitol.

First, unlike many others who came to the Capitol on January 6 and now find themselves charged with violent and conspiratorial criminal offenses, Defendant did not have, possess, or wear any tactical gear, goggles, weapons, or items of any sort that showed an association with other groups or advanced planning. In fact, counsel believe the government will concede that Defendant is not part of any of the groups that are associated with planning violence prior to January 6th.[2] Second, as set forth in the Statement of Offense, the baton that Defendant used to strike at a law enforcement officer was found on the ground; and Defendant did so in an apparent attempt to knock pepper spray out of the officer's hand. Defendant told the government that he did not intend to hurt the officer; and that, in fact, he was caught up in the moment and simply wanted to stop the pepper spray. This, most certainly, is not suggested to be an excuse for his regrettable and stupid conduct, which is truly inexcusable; but most certainly is completely out of character for Defendant, who has a relatively unblemished prior background. Information provided to the defense to date further indicates that the officer thankfully did not have to seek medical treatment or receive any bodily injury. Third, Defendant has no violence whatsoever in his background, as noted in the Pretrial Services Report.

Thus, counsel respectfully submits that it simply cannot be said that Defendant is either

---

[2] As but one glaring example of Defendant's lack of preparation or prior intention to commit violence, as is clear from the plea agreement, Defendant stood out from the crowd in the tunnel wearing his green, white and blue Seattle Seahawks aviator hat and a University of Washington jacket that bore a large white "W." This was noted by AUSA Chawla in counsel's first conversation with him.

likely to flee or pose a danger to others or the community.  The Court may, accordingly, consider whether "exceptional circumstances" justify Defendant's ongoing release pending sentencing.

### C. Exceptional Reasons Support Defendant's Release Pending Sentencing

The term "exceptional circumstances" evinces Congress's intent to vest the Court with "broad discretion … to consider all the particular circumstances of the case before it and [to] draw upon its broad experience with the mainsprings of human conduct."  *Harris*, 451 F. Supp. at 71 (*quoting United States v. Garcia*, 340 F.3d 1013, 1018 (9th Cir. 2003)).  Courts have also observed that "exceptional reasons" permitting the release of a defendant subject to mandatory detention are those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary."  *See United States v. McKenzie*, 2020 WL 1503669 at *3 (S.D.N.Y. March 30, 2020) (citing *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991).  In short, Congress included the "exceptional reasons" provision "as an avenue of relief from the mandatory detention provisions." *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992).

Writing in late March 2020, Judge Moss was compelled to find "exceptional circumstances" based on the nascent stages of the COVID-19 pandemic that was just beginning to grip the country, including jails and detention facilities.  *Harris*, 451 F. Supp. at 71.  It unfortunately appears that we are very much on the precipice of another crisis spurred by the highly contagious Delta variant.  If Defendant is ordered detained in Seattle at the time of the plea, he will be forced ultimately to be brought to this District cross-country by the U.S. Marshals, likely via the BOP flight center in Oklahoma City, which will probably require multiple quarantines in each facility he is placed in during the travel, which in counsel's experience can often be several different county jails along the way.  This is not only a potential danger to Defendant's health but is also most certainly a drain on the resources of the various facilities and personnel.

As this Court surely needs little reminding, the world remains in the grips of a deadly pandemic caused by COVID-19. As of August 3, 2021, there have been over 35.3 million COVID-19 cases and over 614,000 COVID-19 deaths in the United States alone, more than any other country.[3] Currently, the COVID-19 new case rate is rising steeply again in all regions of the United States, at a 139% percent increase in the last fourteen days as of August 3, 2021, on which there was a daily average of 93,005 new cases and 47,393 hospitalizations. *Id.* Put plainly, the national average is more than seven times as many cases a day as it was at the start of July. This is in part due to the Delta variant, which the Centers for Disease Control (CDC) has categorized as a "variant of concern."[4] It accounts for 80% of new cases nationwide, and has been reported to be even more severe and as possibly as contagious as chickenpox.[5] Defendant is especially vulnerable because he has not been vaccinated against COVID-19 due to concerns over severe allergic reactions that he may experience because of an ingredient contained in the COVID-19 vaccines.[6] Defendant has been willing to be vaccinated, provided that he is cleared to do so by his doctor. At present, Defendant continues to coordinate with his doctor in Washington State to determine whether it is medically safe for him to be vaccinated.

There are additional reasons that support Defendant's ongoing release pending sentencing. Defendant is gainfully employed in Washington state, as reflected in the Pretrial Services Report. Pre-sentencing incarceration would result in the loss of this employment, which would also impose undue and serious strains on Defendant's Sixth Amendment right to counsel of choice. While

---

[3] *See* The New York Times, *Covid in the U.S.: Latest Map and Case Count,* (available at: https://nyti.ms/37E5tXZ) (last visited May 3, 2021).
[4] *See* Centers for Disease Control, *SARS-CoV-2 Variant Classifications and Definitions* (available at: https://bit.ly/2TUOLPm) (last visited: Aug. 3, 2021).
[5] *See* Roni Caryn Rabin, *Is the Delta Variant Making Younger Adults 'Sicker, Quicker'?*, The New York Times, Aug. 3, 2021 (available at: https://nyti.ms/3CkxHDS) (last visited: Aug. 3, 2021).
[6] Defendant has experienced severe allergic reactions to substances that contain Polysorbate 80, which is nearly identical to an inactive ingredient in the COVID-19 vaccines. *See* Centers for Disease Control, *COVID-19 Vaccines for People with Allergies*, Mar. 25, 2021 (available at: https://bit.ly/2WTQ4z7) (last visited Aug. 4, 2021).

Defendant promptly retained private counsel upon learning that the FBI sought to interview him, as also reflected in the Pretrial Services Report, his and his family's finances are limited, to say the least. Put simply, it would not be feasible for undersigned counsel to be required to visit with Defendant in custody, either in a facility located in Washington, D.C. or Washington state, in order to review documents such as the Presentence Investigation Report, sentencing pleadings, or other records.

Lastly, counsel would note that Defendant's Asperger's Syndrome, also noted in the Pretrial Services Report, presents an additional exceptional circumstance supporting release. Counsel is currently evaluating whether Defendant should be examined by an expert who may opine on the impact Defendant's Asperger's Syndrome may have had on the offense conduct; as well as to questions regarding appropriate conditions of confinement. It would be inordinately difficult, burdensome, and likely cost-prohibitive for these evaluations to be conducted should Defendant be detained prior to sentencing.

### III. CONCLUSION

For the above stated reasons, counsel respectfully requests that the Court order that, pursuant to 18 U.S.C. §3145(c), Defendant remain released under the conditions of bond recommended by Pretrial Services in its Report. (Dkt. #6). Alternatively, counsel respectfully requests that after Defendant's change of plea, the Court withhold its finding of guilt until Defendant's sentencing and further order that Defendant remain released on appropriate conditions of bond.

/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/ Joshua G. Herman
**JOSHUA G. HERMAN**,
Attorneys for Defendant

**DURKIN & ROBERTS**
515 W. Arlington Place
Chicago, IL 60614
(312) 913-9300
tdurkin@durkinroberts.com

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson Blvd., Suite 404
Chicago, IL 60614
(312) 909-0434
jherman@joshhermanlaw.com

## **CERTIFICATE OF SERVICE**

      Thomas Anthony Durkin, Attorney at Law, hereby certifies that the foregoing was filed on August 5, 2021, through the Court's Electronic Case Filing system (ECF) and thereby delivered to all counsel of record.

      /s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN**
515 West Arlington Place
Chicago, Illinois 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com

**DURKIN & ROBERTS**
515 West Arlington Place
Chicago, Illinois 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com