UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>   v.<br><br>**DEVLYN THOMPSON,**<br><br>   **Defendant.** | **Case No. 21-cr-461 (RCL)** |

### UNITED STATES' SUR-REPLY TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sur-reply to defendant Devlyn Thompson's motion for a compassionate release.

**I.    Defendant Has Still Not Provided ANY Evidence of Deteriorating Mental Health**

Despite counsel's repeated rhetoric in its motion and reply brief, there is zero evidence in the record that the defendant is currently suffering from diminished capacity, increased criminality, a mental health crisis, health problems, or suffering of any type. The defendant's affidavit (Exhibit D to the Reply Brief) does not identify any issues, and there is no expert report or analysis. There is also no evidence tying any such effect to any specific cause. The only statement in the actual record about a specific negative effect is a lone statement from the defendant's mother (in Exhibit C to the Reply Brief) that, despite not being able to see or visit the defendant, or talk to him regularly, that:

> Over the year and half that he has been in federal custody, I have been disturbed to witness, over the phone, a steady decline in Devlyn's ability to communicate. He speaks less and is clearly frightened of basic social interactions. . . . I hear him shutting down and knowing his condition as well as I do, I know that his shut down could take years to reverse, if ever.

1

*Id.* at ¶ 8, 10.  This opinion, based on limited contact with the defendant over the phone (who may have many reasons for being less inclined to speak, including being in the presence of other persons or inmates), cannot be the basis of a finding of extraordinary and compelling reasons for compassionate release or a reduction in sentence.  This singular opinion further fails to establish that the observed concern is due to any failure to obtain mental health treatment, or simply from being incarcerated.[1]

Instead of proof of disability or suffering, the defendant's motion, and the defendant's mother's affidavits and letters, presume the defendant to be helpless and unable to make rational choices in prison because of an ASD diagnosis.  They likewise argue, projecting off that same presumption and without proof, that the defendant must be overwhelmed and in extreme suffering because he is incarcerated in Mississippi, far from his mother's home in Washington State.  The actual record before the Court – going back to uncontested PSR -- belies those assumptions: the defendant is an intelligent man with college experience, who was, prior to the criminal incident that led to his arrest, living alone in Atlanta, Georgia, well-employed as a portfolio manager, and he had demonstrated an ability to maintain a relationship with a girlfriend for more than three years.  Presentence Report at ¶¶ 54 and 69.  Prior to living in Atlanta, he lived in Los Angeles, Oregon, and Colorado without his mother or family, and he did not need or access mental health treatment during that period.  *Id.* at ¶¶ 54, 62, and 69.  The record also shows the defendant moved out from his mother's home after high school, in 2011.  *Id.* The defendant bears the burden to establish extraordinary and compelling reasons that early release is

---

[1] The record also indicates that prison officials contacted by the defendant's mother in October 2022 reported that the defendant was doing "fine" and that his communication was "fine." Exhibit C to the Reply Brief at ¶9.

warranted, *see United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014), and he has not met this burden.

## II. The Defendant Has Not Demonstrated a Good Faith Effort to Address the Claimed Lack of Care

Defense counsel repeatedly argues that the prison has engaged in a "total failure to provide accommodation or treatment," Reply Brief at 1, but the actual record before this Court does not show that the defendant sought the accommodation or care that he claims he needs. Specifically, the only evidence presented to this Court that the defendant actually sought mental health assistance is found in the defendant's affidavit. There the defendant claimed that, "When I arrived at Yazoo City . . . I was assigned a case manager. I asked her if I could see a psychologist or therapist. I never saw a therapist or psychologist." Exhibit C to Defendant's Reply Brief at ¶ 5.[2] Even if this statement can be construed as a request for mental health services, a one-time oral request for services over a year and a half ago is insufficient to show any good faith effort to secure mental health services from the prison.

While the defense appears to suggest that counsel's emailed letter to the warden's assistant, dated September 16, 2022, was a plea for mental health care, closer inspection of the letter demonstrates that it was just the opposite, and contained no demand for prison services. The letter merely catalogued information about the defendant's ASD condition and avoided any representations about efforts taken by Mr. Thompson to acquire services. In the key passage counsel stated:

---

[2] The government notes this statement is artfully worded to avoid stating what the case manager's response was to the defendant (though assuredly if it was helpful to his motion, counsel would have included it in the affidavit). As discussed *infra*, the defendant did get screened for mental health treatment. It is possible, on this record, that the defendant was offered services but that he declined to follow up.

3

> In the face of this near constant sensory overload, Mr. Thompson has seen neither a psychologist nor a medical doctor. He has received no treatment whatsoever. Since entering the BOP, Mr. Thompson has been afforded only one meeting with psychology staff, an intake that occurred in August of 2021. Since that time, the BOP has failed to provide any treatment or create a treatment plan. This failure, combined with the current conditions of FCI Yazoo City Low, has allowed Mr. Thompson's ASD to go entirely untreated and has caused his mental health to deteriorate at an alarming pace.

Ex. A at 2.[3]  The letter then specifically rejected prison mental health services, as the letter concluded that "Mr. Thompson requires treatment and care outside of the prison system . . . ." *Id.* at 3.  Thus the letter to the Warden was not an effort to obtain prison services: it was geared exclusively to request immediate compassionate release to the defendant's mother's care. *Id.* at 3.  A reasonable warden reading the letter would also likely have concluded that the defendant was simply no longer interested in obtaining prison mental health services.

The defendant has had the same legal counsel since his sentencing, and according to the defendant's mother, they have had "a specialist lined up for Devlyn since [counsel] took his case," in 2021.  Attachment B to Defendant's Reply Brief.  Despite this, the defense has presented no evidence -- whether that be by administrative demand, letter to the warden from the specialist, unofficial contact with the case manager, or even a civil lawsuit-- showing a written or formal request from the defendant to the Bureau of Prisons to provide mental health services, or reconsider a denial of any such service.  As if to underline this point, the defense has also not presented a post-release treatment plan that would remedy the purported ills from which they complain he now suffers.  Under these circumstances, the defendant has not shown a good faith

---

[3] The defense has made no claim that it made any follow-up request for mental health treatment or assistance since this initial screening interview in April 2021.  Neither has the defense claimed that the initial evaluation was faulty or inaccurate.  They have also have not claimed to have requested a re-screening from the prison.

effort to obtain the services that he claims would help him, let alone meet the requirement of administrative exhaustion.

The administrative exhaustion requirement exists so that sentencing courts are not inundated with requests for assistance from sentenced defendants which can be accomplished by means within the Bureau of Prisons. Here, defense team has not followed up with the prison for the services it claims he needed, and its failure to pursue such treatment from the prison in the first instance should preclude this motion. *See United States v. Jenkins*, 2020 WL 1872568 at *1 (D. Neb. Apr. 14, 2020) (Court should not consider motion "based on evidence or arguments that weren't presented to the Bureau of Prisons first").

## CONCLUSION

For the reasons above, and based on the entire record, this Court should summarily deny defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

_____/S/_____
TEJPAL S. CHAWLA
Assistant United States Attorney
National Security Section
D.C. Bar No. 464012
601 D Street, NW
Washington, D.C. 20530
Tejpal.chawla@usdoj.gov
(202) 252-7280